UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JUAN BASAGOITIA,

               Petitioner,                   <u>NOT FOR PUBLICATION</u>
                                                   **MEMORANDUM & ORDER**
     - against -                         09-CV-01768 (CBA)


JOSEPH T. SMITH,
Superintendent, Shawangunk Correctional Facility,

               Respondent.
-------------------------------------------------------------------x
AMON, Chief United States District Judge.

      Juan Basagoitia, proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He seeks to vacate his New York state conviction following a jury

trial in the Supreme Court of New York, Queens County, of attempted murder, burglary,

conspiracy, and assault. Basagoitia challenges his convictions claiming that evidence was

admitted in violation of the Confrontation Clause, the evidence was insufficient to support his

convictions, the prosecutor engaged in misconduct, counsel provided ineffective assistance, and

the court-appointed interpreters were ineffective. For the reasons stated below, Basagoitia's

petition is denied.

**BACKROUND**

## I. Trial and Conviction

      In the early hours of March 4, 2003, David Robles and Daniel Machuca broke into the

apartment of William and David Lavery, two tenants in a rent-controlled apartment building in

Queens owned by Basagoitia. Upon entering the apartment, Robles and Machuca attacked the

Lavery brothers with hook knives, inflicting wounds on the brothers' heads, necks, and limbs.

Another tenant in the building called the police, and the Lavery brothers were taken to Elmhurst

1

General Hospital where they both underwent extensive surgeries. Both were left with permanent, disfiguring injuries. Robles and Machuca were arrested shortly thereafter.

On March 8, 2003, the police asked Basagoitia to come to the precinct for questioning. Basagoitia was advised of his Miranda rights and gave a video-taped statement. Basagoitia admitted that he had agreed to pay Robles $2,500 to scare the Lavery brothers into vacating their apartment, so that Basagoitia could charge a subsequent tenant a higher rent. Basagoitia claimed to the police that Robles never told him how he was going to scare the Laverys, and that Basagoitia was not aware that it would rise to the level of life-threatening violence. Basagoitia was subsequently arrested and charged with hiring Robles and Machuca to break into the Laverys' apartment and kill them.

Machuca entered a guilty plea to attempted murder for his participation in the attacks, and at Basagoitia's trial, he testified for the State pursuant to a cooperation agreement. Machuca testified that in February 2003, Robles asked Machuca to help him intimidate the Laverys. According to Robles, Basagoitia was trying to sell the building and was having difficulty because the Lavery brothers were paying under-market rent. Robles initially told Machuca that Basagoitia wanted them to intimidate the Lavery brothers by beating them up.

On a Saturday later that month, Robles told Machuca that he was going to ask Basagoitia for some of the money in advance. When Machuca saw Basagoitia later, Basagoitia told him to tell Robles that "he had that." (Tr. 579-81.) Machuca relayed this message to Robles, and Robles left their room and returned with $700.

That Sunday, Robles and Machuca had a conversation while on a trip to New Jersey, during which Robles told Machuca that the plan had been "upgraded" in that they were no longer just going to beat up the Lavery brothers but were going to kill them. (Tr. 583.) According to

Machuca, Robles explained that the Laverys had been intimidated in the past and had not left the apartment, so they had to resort to more extreme measures. Robles also told Machuca that it was Basagoitia's idea to upgrade the plan, and that Basagoitia wanted them to get rid of the Lavery brothers by "any means necessary." (Tr. 585.)

Machuca also testified that after he was arrested and arraigned, he was taken to jail on a boat in the Bronx. Robles was also there, and, about one and a half weeks later, Basagoitia also came onto the boat. When Basagoitia arrived, Machuca observed Robles approach him pointing to an article in the Daily News about the Lavery incident. Robles angrily asked Basagoitia, "Where is the money you were supposed to have given us?" (Tr. 614-15.) Machuca overheard Basagoitia reply, "If the job would have finished, if you would have done the job right, we wouldn't be sitting down here having this conversation." (Tr. 615.)

At the conclusion of the trial, the jury convicted Basagoitia of two counts of Attempted Murder in the First Degree, N.Y. Penal Law §§ 110; 125.27(1)(a)(vi); two counts of Attempted Murder in the Second Degree, N.Y. Penal Law § 140.25(2); two counts of Burglary in the First Degree, N.Y. Penal Law §§ 140.30(2),(3); Burglary in the Second Degree, N.Y Penal Law § 140.25(2); Conspiracy in the Second Degree, N.Y. Penal Law § 105.10(1); Conspiracy in the Fourth Degree, N.Y. Penal Law § 105.10(1); and four counts of Assault in the First Degree, N.Y. Penal Law § 120.10(1),(4). Basagoitia was sentenced to an aggregate indeterminate prison term of from forty-four years to life.

## II. Direct Appeal

Basagoitia timely appealed his conviction to the Appellate Division, Second Department. He argued that the trial court, in violation of his due process right to a fair trial and the Confrontation Clause, improperly admitted Machuca's testimony concerning his conversations

with Robles, which he claimed was inadmissible hearsay; that the evidence was insufficient to support the conviction; and that the sentence imposed was excessive.  In a <u>pro se</u> supplemental brief, Basagoitia raised three additional claims: that his trial counsel was ineffective for failing to disclose a favorable plea offer and for failing to alert the trial court that Basagoitia could not understand the court-appointed interpreters; that his inability to comprehend the interpreters rendered his trial fundamentally unfair in violation of the Due Process Clause and the Fifth and Sixth Amendments; and that the trial prosecutor committed various instances of misconduct, particularly in the statements made during the prosecutor's summation.

On October 7, 2008, the Appellate Division affirmed Basagoitia's judgment of conviction.  <u>People v. Basagoitia</u>, 865 N.Y.S.2d 313 (2d Dep't 2008).  The court held first that the trial court properly declined to strike portions of Machuca's testimony and properly received the testimony under the co-conspirator exception to the hearsay rule.  <u>Id.</u> at 314-15.  The court then determined that Basagoitia's right of confrontation was not violated because the statements at issue were "not testimonial in nature."  <u>Id.</u> at 315.  In addition, the court rejected Basagoitia's evidentiary insufficiency claims, finding that the evidence was legally sufficient to support his conviction for attempted murder in the first degree and that his remaining evidentiary challenges were "unpreserved for appellate review and, in any event, without merit."  <u>Id.</u>  The court, moreover, determined that Basagoitia's sentence was not excessive.  <u>Id.</u> at 316.

The court also rejected each of the claims raised in Basagoitia's supplemental brief.  The court determined that, insofar as Basagoitia's ineffective assistance of counsel claim involved matters contained in the record, it was without merit.  To the extent the claim relied on matters not contained in the record, the court declined to reach it.  <u>Id.</u> at 316.  The court held further that the challenged comments in the prosecutor's summation "were either fair comment on the

evidence, were a fair response to the defense summation, or [did] not warrant reversal." Id.
Finally, the court stated that the remaining contentions raised in Basagoitia's pro se supplemental
brief were "unpreserved for appellate review and, in any event, without merit." Id.

On January 28, 2009, the New York Court of Appeals denied petitioner's application for
leave to appeal the Appellate Division's affirmance of his judgment of conviction. People v.
Basagoitia, 874 N.Y.S.2d 7 (2009).

### III. Federal Habeas Petition

Basagoitia subsequently filed this timely petition for a writ of habeas corpus on April 24,
2009. With the exception of the challenge to the severity of his sentence, he asserted all of the
claims that he presented to the Appellate Division, including those raised in his supplemental
brief.

On October 8, 2009, Basagoitia filed a pro se motion for a stay of this habeas proceeding,
stating his intention to file a motion in state court challenging his judgment of conviction
pursuant to New York Criminal Procedure Law § 440.10. (DE #10.) In its Order of September
14, 2010, this Court denied the motion without prejudice because it failed to specify the nature of
the claim he wished to pursue in state court, but also afforded him the opportunity to re-file by
October 15, 2010. (DE #14.) Basagoitia filed a letter dated September 24, 2010 purporting to
respond to the Court's Order, explaining that he intended to pursue a claim of prosecutorial
misconduct in state court. (DE #15) The Court denied this request in its September 29, 2011
Order, stating that Basagoitia failed to demonstrate good cause for his failure to exhaust and that
the proposed claim was meritless in any event. (DE #21.)

In an Order dated February 9, 2012, the Court directed the parties to address what
appeared to be an unexhausted claim in Basagoitia's petition, relating to his alleged inability to

understand the court-appointed interpreters during his state court proceedings. (DE #22.) The Court explained that because a stay was likely inappropriate, it appeared that Basagoitia's only viable courses of action were either to withdraw the unexhausted claim or to request that the entire petition be dismissed without prejudice. In a submission dated March 1, 2012, the respondent stated that the claim was in fact unexhausted, that a stay was not appropriate, and that the petition should either be dismissed in its entirety or the unexhausted claim withdrawn. (DE #23.) Following a letter submitted on behalf of Basagoitia requesting court-appointed counsel (DE #25), this Court denied the request to appoint counsel and restricted Basagoitia's courses of action in this proceeding to either withdrawing the unexhausted claim or requesting that his entire petition be dismissed. (DE #26.) On March 26, 2012, Basagoitia filed a response, conceding that his claim that trial counsel was ineffective for failing to address his inability to understand the court-appointed interpreters was unexhausted and withdrawing the unexhausted claim. (DE #27.)

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court, moreover, may not grant the writ "with respect to any claim . . . adjudicated on the merits in State court proceedings" unless that ruling is either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). To receive this deferential review, a state court decision

need not include an explanation of the court's reasoning; indeed, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011).

A ruling on the merits is "contrary to" clearly established Supreme Court precedent "if it arrives at a conclusion opposite to that reached by th[e] Court on a question of law . . . or decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. An "unreasonable application" of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In determining whether an application is unreasonable, "the question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 476 (2007); see also Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009).

## I. Admission of Machuca's Testimony

Basagoitia argues that the trial court improperly admitted hearsay statements of David Robles through the testimony of Daniel Machuca in violation of both his due process right to a fair trial and the Confrontation Clause. Specifically, Basagoitia objects to the portions of Machuca's testimony that recount how Robles informed him that they were going to kill the Lavery brothers because Basagoitia had "upgraded" the plan and wanted them to "get rid" of the Lavery brothers by "any means necessary." (Tr. 583-85.) Because both these claims were rejected on their merits in state court, Basagoitia, 865 N.Y.S.2d at 314-15, the Appellate Division's ruling is entitled to AEDPA deference. See 28 U.S.C. § 2254(d).

### A. Due process

Basagoitia asserts that the trial court improperly admitted Machuca's testimony regarding Robles' statements under the co-conspirator's exception to the hearsay rule in the absence of prima facie evidence independent of the statements sought to be introduced establishing the conspiracy or Basagoitia's participation in it. This error, he argues, deprived him of his right to a fair trial. Although Basagoitia refers to this alleged improper admission as a confrontation clause error in his concluding paragraph on this point (Pet. at 6), the Court understands these arguments to be a distinct due process challenge to the state court's ruling on a matter of state evidentiary law, i.e., New York's co-conspirator exception to the hearsay rule, see, e.g., People v. Caban, 5 N.Y.3d 143, 148 (2005) (defining exception).

The Court notes at the threshold that state evidentiary determinations are generally a matter of state law and not subject to habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004). Challenges to the admissibility of evidence are cognizable on federal habeas review only if the petitioner can establish that the decision to admit the evidence "deprived the petitioner of his due process right to a "'fundamentally fair trial.'" Freeman v. Kadien, 684 F.3d 30, 35 (2d Cir. 2012) (quoting Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004)). "That is a heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Daniel v. Conway, 498 F. Supp. 2d 673, 682 (S.D.N.Y. 2007) (internal quotation marks and citation omitted); see also DiGuglielmo, 366 F.3d at.136 ("[A]lleged 'errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.'") (quoting Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). As a result, to determine whether a state court's evidentiary errors are of a constitutional magnitude, "the Court must

consider: (1) whether the evidentiary ruling was erroneous under state law, and (2) if so, whether the error amounted to the denial of the constitutional right to a fundamentally fair trial." Riedel v. Perez, No. CV-08-3593, 2012 WL 3598829, at *14 (E.D.N.Y. Aug. 15, 2012).

In New York, "[a] declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule." People v. Bac Tran, 80 N.Y.2d 170, 179 (1992). Nevertheless, such declarations, as Basagoitia points out, may be admitted only when, "without recourse to the declarations sought to be introduced," a prima facie case of conspiracy has been established. People v. Wolf, 98 N.Y.2d 105, 118 (2002) (internal quotation marks and citation omitted). "A conspiracy consists of an agreement to commit an underlying substantive crime (here, murder), coupled with an overt act committed by one of the conspirators in furtherance of the conspiracy." Caban, 5 N.Y.3d at 189.

Here, the prosecution presented evidence independent of the contested statements tending to establish that: (1) a conspiracy aimed at the Lavery brothers existed that involved Basagoitia, Robles, and Machuca (see, e.g., Tr. 475-76 [testimony of Detective Romero reading Basagoitia's admission that he agreed to pay Robles $2500 to beat up Lavery brothers]); 579-581 [Machuca's testimony regarding Robles' intention to request an advance and Basagoitia's response to Machuca that "he had that"], 587-88 [Machuca's testimony that he and Robles had no "difficulties or problems" with the Laverys]); (2) that Basagoitia had a motive for harming the Laverys (see, e.g., Tr. 588 [Machuca's testimony that Basagoitia complained in his presence that he was unable to sell building because the Laverys were paying too little rent]; 706-08 [D. Lavery's testimony regarding Basagoitia's attempt to evict them and his complaints about their below market-rate rental payments], 369-372 [W. Lavery's testimony regarding same]; and (3) that the conspiracy was "upgraded" to a plan that involved killing the Lavery brothers (see,e.g.,

Tr. 593-97 [Machuca's testimony regarding purchase of utility knives, one with a hook, "[f]or the crime"]; Machuca's testimony that in his presence on the prison boat Basagoitia replied to Robles' demand for the rest of the money stating "[i]f the job would have finished, if you would have done the job right, we wouldn't be sitting down here having this conversation."; 443-452 [treating physician's description of the life-threatening nature of the Laverys' injuries from attack]).

There was, moreover, ample evidence of an overt act. Given this evidence, and the deference required of a habeas court for the review of a state evidentiary ruling, see Estelle, 502 U.S. at 71-72, this Court concludes that the trial court's admission of Robles' statements under the co-conspirator exception did not result in a denial of a fair trial. Indeed it was not even error. See also Maldonado v. West, No. 1:05-CV-3132, 2007 WL 188684, at *11 (E.D.N.Y. Jan. 22, 2007) ("Habeas review is not the venue for second-guessing close evidentiary calls.") Accordingly, the Court denies this claim.

### B.     Confrontation Clause

Basagoitia also claims that the admission of Machuca's testimony regarding Robles' statements violated the Confrontation Clause of the Sixth Amendment. Specifically, he asserts that the Appellate Division's determination that Basagoitia's confrontation rights had not been violated because the admitted statements were "not testimonial in nature," Basagoitia, 865 N.Y.S.2d at 315 (citing Crawford v. Washington, 541 U.S. 36, 51-51 (2004)), was an unreasonable application of clearly established Supreme Court precedent. (Pet. at 8-9.)

This Court has no difficulty concluding that the Appellate Division did not unreasonably apply clearly established Supreme Court precedent. Crawford provides that the Confrontation Clause prohibits the admission of out-of-court "testimonial" statements against a criminal defendant at trial unless the declarant is unavailable and the defendant has had a prior

10

opportunity to cross-examine the declarant.  Crawford, 541 U.S. at 57-59, 68.  In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court further clarified that the scope of the Confrontation Clause is confined to testimonial statements.[1]  See also Bierenbaum v. Graham, 607 F.3d 36, 49 (2d Cir. 2010) ("Nontestimonial statements . . . do not implicate the Confrontation Clause.").  As the Court explained, "[o]nly [testimonial] statements . . . cause the declarant to be a 'witness' within the meaning of the Confrontation Clause . . .  It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  Davis, 547 at 821.  Thus, as the Second Circuit explains, "the inquiry under the Confrontation Clause is whether the statement at issue is testimonial.  If so, the Confrontation Clause requirements of unavailability and prior cross-examination apply.  If not, the Confrontation Clause poses no bar to the statement's admission."   United States v. Feliz, 467 F.3d 227, 232 (2d Cir. 2006)

"Although the [Crawford] Court declined to 'spell out a comprehensive definition of "testimonial,"' it provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations."  United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004) (quoting Crawford, 541 U.S. at 50-52, 68).  The "critical factor," the Second Circuit explained in interpreting Crawford, "is 'the declarant's awareness or expectation that his or her statements may later be used at a trial.'"  United States v. Farhane, 634 F.3d 127, 163 (2d Cir. 2011) (quoting Sagat, 377 F.3d at 228).

---

[1] The Court notes that even if the trial court here had improperly admitted Machuca's testimony under the state hearsay exception, that error would not change the conclusion that Basagoitia's confrontation rights were not violated.  See Delesline v. Conway, 755 F. Supp.2d 487, 499-500 (S.D.N.Y. 2010) ("[E]ven the admission of a hearsay statement will not violate the Confrontation Clause unless this statement is testimonial.").

Thus, for example, the Crawford Court itself acknowledged that "[m]ost of the hearsay exceptions cover[] statements that by their nature [are] not testimonial—for example, . . . statements in furtherance of a conspiracy." Crawford, 541 U.S. at 56; see United States v. Logan, 419 F.3d 172, 178 (2d Cir. 2005) ("In general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial."). According to the Second Circuit, moreover, "a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of Crawford." Saget, 377 F.3d at 229; United States v. Farhane, 634 F.3d 127, 162-63 (2d Cir. 2011) (same).

The contested statements here were likewise made without "awareness or expectation" of later use at trial. Robles' statements to Machuca were made as part of a conversation between co-conspirators discussing aspects of their conspiracy with no awareness of their future use. As a result, the Appellate Division correctly determined that the admitted statements were not testimonial and that therefore, citing Crawford, Basagoitia was not deprived of his confrontation rights. Because the Appellate Division did not unreasonably apply federal law, Basagoitia's Confrontation Clause claim is denied.

## II. Sufficiency of the Evidence

Basagoitia asserts that that there was insufficient evidence to support most of the counts underlying his conviction, including attempted first-degree murder, conspiracy to commit murder, conspiracy to commit burglary, first-degree assault, and first- and second-degree burglary. The Appellate Division found that only the challenge to the evidence supporting the counts of attempted murder in the first degree was preserved for appellate review.[2] Basagoitia,

---

[2] As to this claim, the Appellate Division found that Basagoitia was mounting two distinct grounds for challenging the sufficiency of the evidence supporting the first degree attempted murder counts: "that he could not be linked to those crimes based on a co-conspirator's testimony" and that the "co-conspirator's testimony was incredible as a matter of law." Basagoitia, 856 N.Y.S.2d at 620. The court found that "only the former ground is preserved for

865 N.Y.S.2d at 620. Reviewing this challenge on the merits, the court held that the evidence was legally sufficient. Id. The court found that the remaining sufficiency-of-the-evidence challenges were "unpreserved for appellate review and, in any event, without merit." Id. Because the state court decided the challenge to the first-degree attempted murder counts on the merits, that ruling is entitled to AEDPA deference. Basagoitia's remaining unpreserved claims are procedurally defaulted.

### A. Legal sufficiency of the first-degree attempted murder evidence

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court clearly established that "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Id. at 315 (quoting In re Winship, 397 U.S. 358, 364 (1970)). Accordingly, when a habeas petitioner challenges the sufficiency of the evidence to support a criminal conviction, "the critical inquiry . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 319. To analyze this claim, a court must therefore determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; see Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007). Thus, a petitioner who seeks habeas relief on the grounds of insufficiency of the evidence "bears a very heavy burden." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

As the Basagoitia jury was instructed, under New York law:

A person is guilty of murder in the first degree when:

---

appellate review," but went on to hold, on the merits, that the evidence was legally sufficient in any event. Id. This Court need not parse out the distinction between these two grounds because it finds that the Appellate Division's holding on the merits was, in any event, not an unreasonable application of due process standards.

1. With intent to cause the death of another person, he causes the death of such person . . .; and
. . .
(vi) the defendant committed the killing or procured commission of the killing pursuant to an agreement with a person other than the intended victim to commit the same for the receipt, or in expectation of the receipt, of anything of pecuniary value.

N.Y. Penal Law § 125.27(1)(a)(vi). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." Id. § 110.00. This conduct must come "very near" or "dangerously near" the completion of the offense, although he need not have "engaged in the last proximate act necessary to accomplish the intended crime." People v. Mahboubian, 74 N.Y.2d 174, 190 (1989). Finally, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. In short, Basagoitia could be found guilty of attempted murder in the first degree if the jury found beyond a reasonable doubt that: (1) he agreed to pay David Robles and Daniel Machuca to kill the Lavery brothers, and (2) Robles and Machuca came within dangerous proximity of doing so.

The Court finds that the Appellate Division's determination that there was legally sufficient evidence to support Basagoitia's convictions on two counts of attempted murder in the first degree was not unreasonable. First and foremost, the jury was entitled to credit the testimony of Machuca, who described the formation of the murder scheme and Basagoitia's role in it. Machuca testified that Robles enlisted him to be a part of the scheme, telling him that Basagoitia was having a problem with the Lavery brothers and wanted them beaten up so that they would leave. Robles told Machuca that they would be paid for the attacks. (Tr. 573-76,

631-32.)  Machuca also testified that after Robles requested an advance on the payment, Basagoitia himself told Machuca to relay that "he had that," after which Robles left and returned with $700.  (Tr. 578-80.)  Next, Machuca testified that subsequent to the initial agreement, Robles told him that the plan had been "upgraded" to include killing the Lavery brothers.  (Tr. 584.)  Machuca testified further that, according to Robles, it was Basagoitia's idea to "upgrade" the plan and that Basagoitia wanted them "to get rid of [the Lavery brothers] at any means necessary."  (Tr. 585.)

Even if Machuca's testimony regarding Robles' statements was not alone sufficient to support a conviction of attempted first-degree murder, the State presented corroborating evidence.  The State presented evidence of Basagoitia's motive, which was to get rid of two tenants who were paying rent that was far below market value.  Basagoitia himself admitted to the police that he had paid Robles to intimidate the Lavery brothers into vacating the apartment so that he could charge new tenants a higher rent.  (Tr. at 475, 478-79.)  Presented, moreover, with evidence of the violent nature of the attack and the use of knives as weapons, the jury could have concluded that the object of the admitted conspiracy was in fact to kill the Lavery brothers.  Both brothers, as well as their treating physicians, testified to the life-threatening nature of the resulting injuries, which included slash wounds to their necks.  (See, e.g. Tr. 404-411; 443-452; 726-27.)  Finally, after the crimes took place, Machuca testified that he saw Basagoitia in jail, and that in response to Robles' demand for the rest of their money, Basagoitia stated, in Machuca's own presence, that "if the job would have finished, if you would have done the job right, we wouldn't be sitting down here having this conversation."  (Tr. at 615.)

The Court concludes that the Appellate Division's conclusion that there was legally sufficient evidence supporting the two counts of attempted murder in the first degree was not an

unreasonable application of clearly established Supreme Court precedent as set out in <u>Jackson</u>.

From the above evidence, a reasonable jury could have concluded beyond a reasonable doubt that Basagoitia agreed to pay Robles and Machuca to kill the Lavery brothers, and that Robles and Machuca came dangerously close to effectuating the murder. Basagoitia's petition for relief on this ground is thus denied.

## B. Procedural default

A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991). Where a state court rejects a claim based on the petitioner's failure to comply with a state procedural rule, the procedural default may constitute an independent and adequate ground for the state court's decision, thus barring federal habeas review. <u>See</u> <u>id.</u> at 729-30, 749-50. A determination that a claim is unpreserved is a sufficient indication that the state court denied the claim on state procedural grounds. <u>See</u> <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005).

Under the New York contemporaneous objection rule, codified at N.Y. C.P.L.R. § 470.05(2), appellate review of a trial court ruling is precluded unless an objection was made to the ruling "by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." As interpreted by New York courts, the rule "require[s], at the very least, that any matter which a party wishes to preserve . . . be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." <u>Whitley v. Ercole</u>, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks and citations omitted). "A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead New York's highest courts uniformly instruct that to preserve a

particular issue for appeal, defendant must specifically focus on the alleged error." Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (internal citations omitted) (collecting cases). Courts in this Circuit have repeatedly held that failure to comply with the contemporaneous objection rule is an adequate and independent bar to federal habeas review. See Downs v. Lape, 657 F.3d 97, 102-08 (2d Cir. 2011); Gonzalez v. Cunningham, 670 F. Supp. 2d 254, 261 (S.D.N.Y. 2009) (citing Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007)); Felder v. Goord, 564 F. Supp. 2d 201, 223 (S.D.N.Y. 2008)).

In this case, the Appellate Division held that Basagoitia's remaining legal sufficiency challenges to the counts of burglary in the first and second degrees, conspiracy in the fourth degree, and assault in the first degree were unpreserved for appellate review. Basagoitia, 865 N.Y.S.2d at 620. Indeed, aside from a general objection to the sufficiency of the evidence to support "any of these crimes," Basagoitia failed to object, let alone with the specificity necessary to preserve the claims, to the legal sufficiency of the evidence for these remaining claims.[3] Thus, because the state court in this case clearly invoked the procedural bar, the fact that this conclusion was expressed in an alternative holding is immaterial to its effect. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." (citation omitted)); Liggins v. Burge, 689 F. Supp. 2d 640, 652-53 & n.8 (S.D.N.Y. 2010). Basagoitia's remaining challenges to the sufficiency of the evidence are therefore procedurally barred.

---

[3] There is some evidence that Basagoitia did raise, as part of his objection to the legal sufficiency of the evidence supporting his attempted first-degree murder conviction, a sufficiency challenge to his first-degree assault (intent to cause serious injury by means of a deadly instrument) conviction. (Tr. 740-50). Even if it had been preserved, however, this Court finds that the evidence was sufficient to support the conviction. "A person is guilty of assault in the first degree when . . . with intent to cause serious injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). Based on the evidence used to support the sufficiency of the attempted first-degree murder conviction, it is clear that the prosecution presented sufficient evidence to likewise support the conviction of first-degree assault.

Nevertheless, a federal habeas court can, in very limited circumstances, review a procedurally defaulted claim. As the Supreme Court states:

> [A] state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262 (1989). "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the challenged trial rulings "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494 (internal quotation marks and citation omitted). The exception to procedural default for a "fundamental miscarriage of justice" requires a colorable showing that "a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494-95 (1991).

Here, Basagoitia makes no attempt to assert cause or prejudice related to his procedural default, and he has not met the very high threshold of demonstrating a fundamental miscarriage of justice. Thus, the Court concludes that the procedural bar for these remaining legal sufficiency claims has not been overcome and rejects Basagoitia's claims for relief on the grounds of the sufficiency of the evidence.

### III. Prosecutorial Misconduct

Basagoitia also claims that prosecutorial misconduct deprived him of his right to a fair trial. In particular, Basagoitia claims that the prosecutor knowingly presented perjured testimony, made improper comments during the opening statement, and committed various

improprieties in the closing statement—including going outside the evidence, shifting the burden to the defendant, and vouching for the credibility of witnesses.  The Appellate Division reviewed the challenge to the prosecutor's summation on the merits and concluded that "all of the challenged comments were either fair comment on the evidence, were a fair response to the defense summation, or do not warrant reversal."  Basagoitia, 865 N.Y.S.2d at 621.  With respect to the remaining allegations, the court found that they were "unpreserved for appellate review and, in any event, without merit."  Id.  Because the state court decided Basagoitia's challenge to the prosecutor's summation on the merits, that ruling is entitled to AEDPA deference.  Basagoitia's remaining unpreserved claims are procedurally defaulted.

Under clearly established Supreme Court law, when a petitioner seeks federal habeas relief on the grounds of improper prosecutorial remarks, "it is not enough the prosecutors' remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted).  Rather, the petitioner must show that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see United States v. Young, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").  The prosecutor's remarks, moreover, "must be evaluated in light of the defense argument that preceded it."  Id. at 179.

Basagoitia points to a number of prosecutorial errors in his claim for misconduct in the prosecutor's summation.  First, he argues that the prosecutor impermissibly vouched for the credibility of Daniel Machuca by: (1) referring to it as "credible" (Tr. 859); (2) stating that "if Danny Machuca was willing to lie, to sell his soul to say whatever he could possibly say to

please me . . . don't you think he could have done a hell of a lot better job?" (Tr. 844); (3) and arguing that "when Danny Machuca tells you that the conversations took place between defendant and Robles, I submit to you that was truthful testimony because it makes sense that the defendant would not confide in the person he doesn't know." (Tr. 845)

Second, Basagoitia claims that the prosecutor strayed from the evidence in a number of ways. He points out that the prosecutor stated that when Basagoitia was picked up by the police, he knew that the Laverys' apartment was "covered in blood" (Tr. 851), a fact not in evidence, and claimed that Machuca first identified Basagoitia as a participant in the crimes at the police station on March 4, 2003 when that fact was not in Machuca's testimony (Tr. 847). Basagoitia also asserts that the prosecutor improperly argued that Basagoitia, in his video-taped statement, stated that he asked Robles to "take out" out the Lavery brothers when in fact the word Basagoitia used, "sacar," means to "bring out." (Tr. 855, 864.) In addition, Basagoitia argues that at various points in the summation, the prosecutor's rhetorical questions to the jury asked them to entertain speculation. (E.g. Tr. 836.)

Third, Basagoitia argues that the prosecutor improperly shifted the burden of proof. In this regard, he highlights the prosecutor's statement that: "William Lavery got up on the witness stand and testified that positively he identified David Robles as the man who caused his injuries . . . . [Defense counsel] didn't ask him a single question to suggest that he was wrong about that I.D., now did he?" (Tr. 852-53.) He claims in addition that, with respect to his statement to the police, the prosecutor impermissibly argued to the jury: "You heard Detective Romero tell you that he was born and raised in Puerto Rico and that he speaks Spanish for his entire life. I never heard Mr. Orden ask him any questions on cross-examination about his competency to interpret." (Tr. 826.)

Finally, Basagoitia claims that the prosecutor asked the jury to convict out of vengeance when he argued that Basagoitia acted out of "greed" and asked the jury to convict "based upon [their] common sense" and "based upon justice" (Tr. 862).

The Court finds that the Appellate Division's conclusion that these remarks did not violate due process was not an unreasonable application of clearly established federal law. In large part, the prosecutor was either offering a fair comment on the evidence presented or specifically responding to arguments raised in the defense summation.

Basagoitia's summation was dedicated almost exclusively to attacking the credibility of Daniel Machuca; the prosecutor's responses did not offer personal opinion, but rather pointed to specific reasons why the jury should find Machuca's testimony believable. As the trial court stated in its denial of Basagoitia's motion for a mistrial, defense counsel "pushed the limits of hyperbole" in his summation with his many references to Machuca as a "liar." (Tr. 866.)

In addition, the prosecutor's comments about questions that defense counsel failed to ask witnesses during trial, while perhaps undesirable, were specific responses to arguments made in the defense summation questioning Detective Romero's ability to interpret Spanish and suggesting that it was Machuca who attacked William Lavery. The prosecutor's translation of the word "sacar," moreover, was based only on the translation that had been presented to the jury, which had never been objected to by defense counsel. (Tr. 871-72.) Meanwhile, the reference to Machuca's March 4, 2003 statement to the police identifying Basagoitia as a participant in the crime was based on testimony that was elicited on redirect examination of Machuca as a prior consistent statement to rebut Basagoitia's claim of recent fabrication. (Tr. 678, 868.) The other challenged comments were not improper or were fair argument. Certainly nothing in the prosecutor's summation was a clear violation of Basagoitia's right to a fair trial.

With respect to the remaining alleged prosecutorial improprieties, the Appellate Division found they were unpreserved for appellate review. Basagoitia has offered no arguments for surmounting this state procedural bar, and the Court thus may not consider those claims in his habeas petition. Accordingly, the Court rejects all claims of prosecutorial misconduct.

## IV. Ineffective Assistance of Counsel

In his supplemental pro se brief to the Appellate Division, Basagoitia asserted claims of ineffective assistance of counsel on two principal grounds: (1) that his attorney failed to notify him of a favorable plea offer of twelve years imprisonment, and (2) that his attorney failed to alert the court that Basagoitia could not understand the court-appointed Spanish interpreters during trial. The Appellate Division held that "to the extent that the defendant's contention . . . that he was denied the effective assistance of counsel because his attorney failed to disclose a potential plea agreement to him relies on matters in the record, it is without merit." Basagoitia, 865 N.Y.S.2d at 620-21. The court also noted that to "the extent that the contention relies on matter dehors the record, we do not reach it." Id.

### A.     Record-Based Claim

Basagoitia's claim of ineffective counsel due to his attorney's alleged failure to disclose a potential plea agreement was decided on the merits and is thus entitled to AEDPA deference. To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that counsel's representation was deficient, meaning that it "fell below an objective standard of reasonableness"; and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Under the first prong, courts must be "highly deferential" to counsel's performance, and must "indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." Id. at 689. The defendant's representation is constitutionally deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see also Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003). To satisfy the prejudice prong, the defendant must show a "reasonable probability" that counsel's deficient performance was "sufficient to undermine confidence in the outcome" of the trial or proceeding. Strickland, 466 U.S. at 694. Where the ineffective assistance relates to a plea offer, the defendant must show "a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011). In addition, Basagoitia's burden of showing ineffective assistance of counsel is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze, 321 F.3d at 112 (2d Cir. 2003).

Insofar as it relies only on the present record, Basagoitia's claim that counsel failed to notify him of the plea offer fails since the Appellate Division's holding was not an unreasonable application of Strickland nor "[an] unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(2). The record reflects that at a pre-trial conference on November 15, 2004, following a sidebar discussion, the judge stated in the presence of the defendant: "It is my understanding that the People are willing to accept a plea . . . to a B violent felony, and the People would require a sentence of 12 years." (Tr. 18.) The judge stated that the offer would be kept open over the weekend so that Basagoitia could confer with his attorney and family members. (Id.) On November 22, 2004, before jury selection commenced, the trial judge reiterated the plea offer on the record and reminded Basagoitia that if convicted of the top count of the indictment, the judge was required to sentence

him to at least fifteen years to life in prison for each victim. (Tr. 29-30.) The judge then asked

Basagoitia's counsel if the defendant wished to accept the plea, and counsel stated that he did

not. (Tr. 30.) Based on this evidence, it was not unreasonable for the Appellate Division to find

that Basagoitia was adequately informed of the plea offer and that his attorney's representation

was not deficient. Basagoitia's record-based ineffective assistance claim thus fails.

### B. Ineffective Assistance of Counsel – Matters Outside the Trial Record

Any of Basagoitia's claims of ineffective assistance that rely on matters outside the

record—whether related to the plea offer or to Basagoitia's alleged inability to understand the

court-appointed interpreters—are presently unexhausted. As the Appellate Division indicated, in

New York, claims of ineffective assistance of counsel that depend on matters outside the trial

record must be raised in a motion to vacate the judgment pursuant to New York Criminal

Procedure Law § 440.10. See, e.g., Snitzel v. Murry, 371 F. Supp. 2d 295, 299 (W.D.N.Y. 2004)

(where ineffective assistance claim is predicated on matters outside the trial record, the

"appropriate vehicle for raising them" in state court is a § 440.10 motion, without which they are

unexhausted); People v. Santer, 816 N.Y.S.2d 444, 444 (1st Dep't 2006) ("Since defendant's

ineffective assistance of counsel claim turns on matters outside the record, . . . it is not

reviewable on direct appeal and would require further record to be developed by way of a CPL

440.10 motion.").

In an Order dated February 9, 2012, this Court directed the parties to address the apparent

exhaustion issue in Basagoitia's petition. (DE #22.) In a submission filed on May 26, 2012,

Basagoitia conceded that the claims that relied on facts outside the trial record were unexhausted,

and moved to withdraw them. (DE #27.) Accordingly, the Court deems these claims withdrawn

and does not consider them.

## V.  Inadequacy of the Court-Appointed Interpreters

The Court observes that, insofar as Basagoitia also frames his arguments related to the trial interpreters as freestanding claims under the Due Process Clause and the Fifth and Sixth Amendments, the Appellate Division held that the remaining claims in Basagoitia's supplemental brief, which would have included this claim, were "unpreserved for appellate review and, in any event, without merit."  Basagoitia, 865 N.Y. S.2d at 621.  This Court notes there were no on the record challenges to the adequacy of the interpreters.  The state court thus clearly invoked a procedural bar.[4]

Although Basagoitia could attempt to assert ineffective assistance of counsel in order to demonstrate cause for this procedural default, as the Court has already concluded, any such ineffective assistance claim relies on matters outside the record and is presently unexhausted. An unexhausted claim of ineffective assistance of counsel may not serve as cause for a procedural default.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986) ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); Zelaya v. Mantello, No. 00 Civ. 0865, 2003 WL 22097510, at *5 (S.D.N.Y. Sept. 10, 2003) ("[Petitioner] did not raise any claim of ineffective assistance of counsel on his direct appeal, and he has not brought a § 440.10 motion to attack his conviction on that ground. Therefore, [petitioner's] ineffective assistance of counsel claim remains unexhausted and may not be used to establish cause for the procedural default of his underlying claim.").

---

[4] An argument could be fashioned that resolution of this claim requires looking to matters outside the record and is therefore unexhausted and could be the subject of a § 440.10 petition.  The Court for reasons stated in its Orders of February 9, 2010 and March 23, 2012 held that it would not stay resolution of this habeas petition to permit exhaustion, and it is clear from Basagoitia's previous correspondence that he would not choose to have this Court dismiss his petition as a mixed petition.

Accordingly, because Basagoitia's remaining claims related to the court-appointed interpreters are procedurally defaulted and he offers no arguments for surmounting this bar, the Court does not consider them.

**CONCLUSION**

The petition for a writ of habeas corpus is denied. Since Basagoitia has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September  30, 2012

_____/s/_____
Carol Bagley Amon
Chief United States District Judge